IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARK WOOD AND DENNIS PARR, on behalf of themselves and all others similarly situated,<br>　　　　　Plaintiffs,<br><br>v.<br><br>LEARJET, INC. and BOMBARDIER, INC.<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No.<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COME NOW the Named Plaintiffs Mark Wood and Dennis Parr, on behalf of themselves and all others similarly situated, through their attorneys, and for their cause of action against Defendants Learjet, Inc. and Bombardier Inc., hereby state and allege as follows:

### I.   INTRODUCTION

**A.   Summary of the Case**

1.   This is a collective action initiated by two former Wichita-based aerospace engineers and other salaried, non-management employees, for themselves and others similarly situated, under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA") against their former joint employers, Learjet, Inc. and Bombardier Inc, (collectively "Defendants"), challenging their terminations from employment by defendants. The Named Plaintiffs also assert individual ADEA termination claims, and Mr. Woods also asserts an individual retaliation claim.

2.   The Named Plaintiffs are age 40 or above, skilled, experienced aerospace engineers with solid (or better) work records.

3.   The Named Plaintiffs seek relief – for themselves and numerous other former

Wichita-based aerospace engineers age 40 and older terminated after the installation of new management for the BFTC engineering group in or about February of 2015 – from defendants' targeted terminations that disproportionately affected older employees, including them. The Named Plaintiffs contend that defendants acted with the purpose and effect of discriminating against them and other like them based on age so as to reduce the average age of the BFTC's engineering workforce.

4.     The Named Plaintiffs contend that they and similarly situated former Wichita-based aerospace engineers of defendants age 40 and over (hereafter "Plaintiffs") were harmed by decisions, policies, practices and plans developed and orchestrated at upper levels of defendants' management beginning in 2015 as management embarked on a program to reduce the average age of the Bombardier Flight Test Center ("BFTC")'s engineering workforce.

**B.     Summary of the Facts**

5.     The discriminatory practices at issues in this matter coincided with the installation of new management for the BFTC engineering group. In or about February of 2015, Tom Bisges became Bombardier's Vice President of Flight Test Engineering, assuming responsibility for all Bombardier flight test engineering and operations at the BFTC in Wichita. Mr. Andy Paterson, as Mr. Bisges' subordinate, was Bombardier's Director of Engineering at the BFTC. Both of these individuals were in the direct chain of command for the Named Plaintiffs and the other engineers at the BFTC discussed in this correspondence.

6.     Evidence will shows that the BFTC's new management team held negative views about the value to the company of older engineers as compared to younger workers. These views were expressed directly by BFTC management and became evident in their employment decisions over the course of 2015 and 2016 as management embarked on a program to reduce the average

age of the BFTC's engineering workforce.

7. During meetings with employees regarding the direction new management would be taking the BFTC, Mr. Paterson discussed the average age of the workforce. He said the average age of the BFTC workforce was 50, and that the company will "work hard" to reduce the average age.

8. During one of these meetings in late 2015, Mr. Paterson said the workforce was like a triangle, as he drew a triangle on a board, with one corner of the triangle pointing up. Mr. Paterson remarked that Bombardier had too many "experienced" employees among its ranks, illustrating his point with another triangle, this time with the corner pointing down. Mr. Paterson then went on to explain that the number of inexperienced workers was very small, represented by the tip of the triangle at the bottom. He said the company needs to "turn the triangle upside down" so that Bombardier has more "younger, inexperienced" employees and contractors, and fewer older, experienced employees and contractors. Mr. Paterson echoed these and similar comments about Bombardier's need to lower the average age of the BFTC workforce multiple times during engineering group meetings during this period.

9. Defendants' view that engineers become less valuable to the company as they age, necessitating that they be replaced by younger workers, was affirmed by Mr. Paterson's boss, Mr. Bisges, and by Bombardier's human resources department serving the BFTC workforce.

10. Mr. Bisges said in late 2015 or early 2016 that the average age of the BFTC workforce is too high, and Bombardier is actively working to reduce the average age and bring in new, younger employees.

11. In addition, in an effort to explain why the company tapers off wage increases for

older employees as compared to their younger counterparts, Heidi Blunk, who at the time was a Senior Human Resource Business Partner with Bombardier, acknowledged the company's position that "*people's performance tends to fall off as they age*."

12. In late 2015, employees began noticing that older, highly experienced engineers and engineering contractors, often with excellent job performance histories, were being demoted or dismissed. Bombardier then filled these positions with significantly younger personnel, often in their 20s or 30s.

13. For example, in the fall of 2015, Bombardier removed a high-level engineer in the Flight Sciences Department at the BFTC, from her team leadership position as a "focal," replacing her with a substantially younger employee who Ms. Miller had trained. This employee was 55 years old at the time, has a Ph.D. in Aerodynamics, 35 years of experience in the aerospace industry, and a record of excellent performance with Bombardier. Nevertheless, Bombardier management told her she was being demoted "*to make room for the young guys*." Not long after this, Bombardier terminated her.

14. Similarly, in November of 2015, a 54-year-old male employee was demoted without explanation from his managerial position as a BFTC Section Chief to a Senior Systems Engineer. A much younger and less experienced employee in her mid-30s was promoted to a supervisory position over the 54-year-old employee, and a male in his late 20s was hired as a team lead who had trained the younger employee prior to being placed in a subordinate position.

15. Around this same time, the company terminated a 66-year-old systems engineering contractor who had been present during Mr. Paterson's "triangle talk." The 66-year-old's manager told him the decision was not due to any concerns about job performance.

16. A 64-year-old Principal Engineer who had been with Bombardier for

approximately 18 years was fired without warning in March of 2016. His Director, Jack Kramer, explained that Bombardier was targeting certain employees to be let go, and that the decision was not related to job performance, with which there were no issues. Although the 64-year-old was told his position was being eliminated, he learned that a much younger employee, who he had trained, took over his job responsibilities. In addition, shortly after being discharged, he discovered that defendant were advertising to fill a position identical or substantially similar to the one he previously occupied.

17. In late 2015 and continuing into 2016, another 64-year-old engineer noticed that Bombardier was removing older engineering employees, a number of whom were subject matter experts highly regarded in the industry. The company was replacing these older engineers with substantially younger employees. He is aware of remarks made by management to older employees telling them if they did not choose to retire, they would be forced out. Significantly, he observed how management was using a task management program (the "TMS system") to fabricate a record of performance deficiencies that would then be used to justify terminating older workers. When BFTC management began telling him that the TMS system was showing that he was not meeting performance expectations, he knew they were setting him up for termination. This employee believed he had no real choice but to resign, which he did in April 2016, rather than go through the same unpleasant experience he saw inflicted on others Bombardier forced out.

18. In May of 2016, Bombardier terminated Named Plaintiff Dennis Parr, a 63-year-old aerospace engineer who had been with the company for approximately 25 years. As noted above, Mr. Parr had observed Bombardier's manipulation of the TMS system to make it appear that older employees were not performing as successfully as younger workers. Although Mr.
5

Parr had a long track record of successful performance with the company, suddenly in 2016, he was fired and replaced by a much younger employee, who was in his 20s and who Mr. Parr had trained.

19. In August of 2016, Bombardier again used the TMS system and an allegation of a purported safety violation to terminate Named Plaintiff Mark Wood. As with these other older workers who were terminated or forced out, and in furtherance of Bombardier's stated goal of reducing the average age of the BFTC workforce – turning the triangle upside down – the company replaced Mr. Wood with a substantially younger employee.

  **C. Summary of the Claims**

20. The Named Plaintiffs assert an ADEA termination claim for themselves and other former Wichita-based aerospace engineers age 40 and older terminated after the installation of new management for the BFTC engineering group in or about February of 2015 based on their age.

21. Named Plaintiff Wood also states an individual claim for retaliation after he made a good faith complaint of age discrimination prior to his termination.

## II. JURISDICTION AND VENUE

22. Original federal question jurisdiction over this suit is conferred on this court by 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to the ADEA, 29 U.S.C. §§ 626(c) and 626(b), the latter of which incorporates 29 U.S.C. § 216(b).

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all of the unlawful employment practices alleged herein were committed, and also had their principal impact, within the jurisdiction of the United States District Court for the District of Kansas.

## III. EXHAUSTION OF CLAIMS

24. All procedural prerequisites for filing this suit have been met.

25. Each of the Named Plaintiffs timely filed charges of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), on behalf of themselves and all others similarly situated. The Named Plaintiffs alleged, and continue to allege, that defendants engaged in a pattern and practice of age discrimination in the terms and conditions of their employment and the employment of others similarly situated, and retaliated against Named Plaintiff Wood for complaining about age discrimination. The Named Plaintiffs alleged, and continue to allege, that defendants' unlawful discrimination against them and others similarly situated culminated in the termination of their employment, and caused and continues to cause substantial injuries, damages and losses, including economic and emotional harm.

26. The Named Plaintiffs filed initial charges on or about January 27, 2017, within 300 days of their termination, and this Complaint and Jury Demand is filed within 90 days of the issuance of the Notice of Right to Sue related to the initial charges.

### IV. PARTIES

27. Plaintiff Mark Wood is a Kansas resident and former employee at Defendants' Wichita facility.

28. Mr. Wood was employed by Defendants as an aerospace engineer in the BFTC for more than eight years, having been hired on March 8, 2008, as a Principal Engineering Specialist. At the time of his discharge on August 2, 2016, Mr. Wood was 59 years old.

29. Throughout his tenure with Bombardier, Mr. Wood was recognized as a valued and high performing employee. In fact, Mr. Wood was one of just several very high performing subject matter experts who was brought back to Bombardier after having been laid off when a

particular project (known as the 85) was cancelled, even though the company had a hiring freeze in place at the time.

30.     Mr. Wood was extremely competent and, until the months leading up to his termination, he consistently received excellent performance evaluations. In fact, in each of the last several years of his employment he was given above average overall ratings of "exceeds expectations." He was regularly recognized as a top performer, and was designated as the "focal" of the Flight Test Engineering Group responsible for leading the entire team.

31.     Plaintiff Dennis Parr is a Kansas resident and former employee at Defendants' Wichita facility.

32.     Mr. Parr was employed by Defendants as an aerospace engineer for more than 25 years, most recently as a Senior Design Specialist in the Bombardier Flight Test Center ("BFTC"). At the age of 62 at the time of his discharge, Mr. Parr was the oldest employee on his team and one of the oldest employees in the BFTC.

33.     During the course of his long career with Defendants, Mr. Parr was repeatedly commended for the quality of his work and, up until the final few months of his employment, Defendants evaluated his job performance as good or better, with never a serious performance deficiency.

34.     Mr. Parr worked his way up to the position of Senior Designer Specialist at the BFTC, which is one of the highest designer positions one can achieve at Bombardier. In Mr. Parr's experience, attaining this position requires an employee to possess and consistently display significant technical experience and subject matter expertise, and to build up a track record of excellent performance. Defendants recognized that Mr. Parr possessed these attributes and promoted him to Senior Designer Specialist several years prior to his termination.

35. Defendants' recognition of Mr. Parr's capabilities as a Senior Designer Specialist also is evident from the important engineering projects the company assigned to him. During the last year of his employment, Mr. Parr was responsible for the design and testing of a number of important systems, including the Flight Data Recorder System Testing ("FDR"), the Information Management System ("IMS"), the Cockpit Voice Recorder System ("CVR"), the Integrated Passenger Control Systems ("IPC"), the Aircraft Personality Module ("APM"), the Electronic Flight Information System ("EFIS"), and the Integrated Flight Information System ("IFIS"). In addition, defendants tasked Mr. Parr with responsibility for providing oversight and senior engineering support for the other less senior engineers within his avionics engineering work group.

36. Defendant Bombardier is headquartered in Montreal, Quebec, Canada and has had a U.S. manufacturing presence for nearly 40 years, with more than 35 sites spread across 17 states employing nearly 7,000 Americans. Defendant Bombardier is an employer within the meaning of the ADEA and can be served with process upon its registered agent, The Corporation Company Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

37. Defendant Bombardier acquired Defendant Learjet Corporation in 1990, including its facility in Wichita, Kansas, where Plaintiffs were employed.

38. Defendant Learjet, Inc. is a Kansas corporation and subsidiary of Defendant Bombardier. At all relevant times, Defendant Learjet employed in excess of 2,000 employees. Defendant Learjet is an employer within the meaning of the ADEA and can be served with process upon its registered agent, The Corporation Company Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

**V.     FACTUAL ALLEGATIONS**

39.     The Named Plaintiffs assert a collective action termination claim via 29 U.S.C. § 626(b) on behalf of themselves and other former Wichita-based aerospace engineers age 40 and older discharged after the installation of new management for the BFTC engineering group in or about February of 2015 based on their age.

40.     Defendants violated the ADEA by considering the age of the Plaintiffs as a factor that made a difference in their discharges.

41.     Based on information gathered thus far, the Named Plaintiffs submit that numerous individuals were affected by Defendants' age-related misconduct and thus, are or should be eligible to participate in asserting the collective action termination claim.

42.     A collective action is superior to other available methods for the fair and efficient adjudication of the group termination claim set forth herein by the Named Plaintiffs.  The collective action mechanism provides for comprehensive and consistent supervision and adjudication of numerous similar claims by a single court.  Its use will result in fewer delays and less expense to all parties and to this Court.  A collective action would also permit the pooling of resources to afford the Plaintiffs an economically feasible alternative to individual litigation.

43.     Individual prosecution of this litigation – by joinder of all those adversely affected by Spirit's alleged misconduct violating the ADEA – would be impractical, unduly expensive, burdensome, and duplicative. It would unnecessarily tax the resources of the court, and would deny the Plaintiffs any realistic chance of vindicating their ADEA rights. The ADEA issues presented in this case are most likely to be efficiently resolved in a single collective action.

## VI.     CLAIMS FOR RELIEF

**COUNT I:**
**Age Discrimination (ADEA) – Collective Action – Termination**
**(on behalf of Named Plaintiffs and all others similarly situated)**

44. Plaintiffs reasserts the allegations set forth in the above paragraphs as if fully set forth herein.

45. This claim is brought on behalf of all Named Plaintiffs, for themselves and others similarly situated ("collectively the "Plaintiffs") – former Wichita-based aerospace engineers age 40 and older terminated after the installation of new management for the BFTC engineering group in or about February of 2015 based on their age.

46. Plaintiffs were skilled, experienced aerospace workers with a solid (or better) work record treated less favorably than their younger counterparts.

47. Prior to any of the terminations in this case, Defendants announced the plan to implement a discriminatory policy of replacing older employees with younger ones. In addition, a member of the company's senior human resources staff in Wichita acknowledged that the company is of the view that job performance declines with age. It is undisputed that two high level employees at Bombardier's Flight Test Center in Wichita, the Vice President of Flight Test Engineering, Mr. Bisges, and the Director of Engineering, Mr. Paterson, both of whom were in the Charging Parties' direct chain of command and were involved in their termination decisions, announced to the workforce that the company was focusing on the ages of its employees and would "work hard" to reduce the average age of the BFTC workforce. The Director of Engineering made a diagram on a board to explain the reduction in workforce age the company was intent on achieving.

48. Defendants' selection of the Plaintiffs for termination, in which their age made a difference in Defendants' decisions, violated the ADEA, 29 U.S.C. §§ 623(a)(1). 170. Defendants engaged in these actions willfully, and with malice or reckless disregard for the federally-protected rights of the Plaintiffs. As a result of Defendants' conduct, Plaintiffs have

suffered and will continue to suffer significant injuries and losses. Plaintiffs seek remedies described in the Prayer for Relief below

## COUNT II:
### Age Discrimination (ADEA) – Individual Claim – Retaliation
### (on behalf of Named Plaintiff Wood)

49. Plaintiffs reasserts the allegations set forth in the above paragraphs as if fully set forth herein.

50. Prior to his discharge, Plaintiff Wood submitted a formal internal complaint of age discrimination, identifying four Bombardier management and human resources employees as the culpable individuals.

51. Within a week of Plaintiff Wood's complaint, at least two of those four individuals decided to fire him.

52. Plaintiff Wood engaged in protected activity by opposing conduct made unlawful by the ADEA as described above.

53. Plaintiff Wood suffered an adverse employment action and was damaged as a result of his termination from employment.

54. There is a causal connection between Plaintiff Wood's exercise of protected activity and Defendants' willful, discriminatory, and unlawful retaliation resulting in Plaintiff Wood's termination.

55. Due to Defendants' misconduct, Plaintiff Wood suffered and will continue to suffer significant injuries and losses.  He seeks remedies set out in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE,** the Named Plaintiffs, on behalf of themselves and others similarly situated (collectively the "Plaintiffs"), respectfully request that the Court enter judgment in their

favor and award the following relief, to the fullest extent allowed by law:

1) a Declaration that the Named Plaintiffs, as set forth above, are similarly situated to other former Wichita-based aerospace engineers age 40 and older terminated after the installation of new management for the BFTC engineering group in or about February of 2015 based on their age;

2) an Order directing Defendants to assist the Court and Plaintiffs to facilitate notice of the collective action claims Plaintiffs propose to maintain, and the right to opt-in to such a collective action for all former employees similarly situated to the Named Plaintiffs;

3) a Declaration that the time for former employees similarly situated to the Named Plaintiffs to file ADEA claims and to opt-in to this collective action shall be tolled by the Named Plaintiffs' filing of collective action charges of age discrimination with the EEOC, which placed Defendants on notice of the collective action nature of this dispute;

4) an Order awarding Plaintiff Wood individual damages for his individual retaliation claim not otherwise compensated by his termination claim, including but not limited to damages for humiliation, embarrassment and emotional distress caused by Defendants' retaliatory conduct.

5) Order awarding the Named Plaintiffs and others similarly situated:
    a. Back pay, in amounts to be determined at trial;
    b. Front pay, in lieu of reinstatement;
    c. Liquidated damages as allowed under the ADEA;
    d. Pre-judgment and post-judgment interest at the highest lawful rate;

  e. Attorneys' fees and costs, including expert witness fees, as allowed; and

  f. Any such further relief as the Court may deem just or equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues triable by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place for trial.

    Respectfully Submitted,

    FOLAND, WICKENS, ROPER,
    HOFER & CRAWFORD, P.C.


    ___/s/ Amy L. Coopman_____
    AMY L. COOPMAN   #17314
    LUKE HERTENSTEIN  #23809
    1200 Main Street, Suite 2200
    Kansas City, MO 64105
    (816) 472-7474
    (816) 472-6262 Fax
    acoopman@fwpclaw.com
    lhertenstein@fwpclaw.com
    **Attorneys for Plaintiff**