# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK WOOD AND DENNIS PARR, on
behalf of themselves and all others similarly
situated,

       *Plaintiffs,*

  vs.

LEARJET, INC. AND BOMBARDIER,
INC.,

       *Defendants.*

Case No. 18-2621-EFM-GEB

## MEMORANDUM AND ORDER

Plaintiffs Mark Wood and Dennis Parr, on behalf of themselves and all others similarly situated, bring a claim against Defendants Learjet, Inc. and Bombardier, Inc. under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. They claim that Defendants engaged in a pattern and practice of age discrimination culminating in their terminations. This matter is before the Court on Plaintiffs' Motion for Conditional Collective Action Certification (Doc. 59). Because the Court finds that Plaintiffs meets the standard for conditional certification, the Court grants Plaintiffs' motion.

## I.     Factual and Procedural Background[1]

Plaintiffs Wood and Parr were employed as aerospace engineers by Defendants. Defendant Bombardier is headquartered in Montreal, Quebec, Canada.   Bombardier acquired Defendant Learjet in 1990, including its facility in Wichita, Kansas.   Learjet is a Kansas corporation and subsidiary of Bombardier.

Plaintiffs allege that Defendants developed a plan or program to reduce the average age of the Bombardier Flight Test Center ("BFTC")'s engineering workforce.  They contend that the discriminatory practices coincided with the installation of new management for the BFTC engineering group.

In or around February 2015, Tom Bisges became Bombardier's Vice President of Flight Test Engineering, assuming responsibility for all Bombardier flight test engineering and operations at the BFTC in Wichita.   Andy Patterson, Bisges' subordinate, was Bombardier's Director of Engineering at the BFTC.  Both individuals were in the direct chain of command for Plaintiffs.

During meetings with employees regarding the direction new management would be taking the BFTC, Patterson discussed that the average age of the BFTC workforce was 50 and that the company would work hard to reduce the average age. During one of the meetings in 2015, Patterson said that the workforce was like a triangle and too many "experienced" employees were at the top of the triangle.  Patterson stated that the company needs to "turn the triangle upside down" so that Bombardier had more "younger, inexperienced" employees and contractors and fewer older, experienced employees and contractors.

---

[1] The facts are taken from Plaintiffs' Complaint and from six declarations submitted by former employees of Defendants.  These include the two named Plaintiffs and four other employees.

In late 2015 or early 2016, Bisges stated that the average age of the BFTC workforce was too high and that Bombardier was actively working to reduce the average age and bring in new, younger employees.  In late 2015, employees began noticing that older, highly-experienced engineers and engineering contractors, often with excellent job performance histories, were being demoted or dismissed.  Bombardier then filled these positions with significantly younger personnel, often in their 20s or 30s.

In the fall of 2015, Bombardier removed a high-level engineer, Ms. Miller, in the Flight Sciences Department at the BFTC from her team leadership position and replaced her with a substantially younger employee that she had trained.  Soon after, Bombardier terminated Miller.

In November 2015, a 54-year-old male was demoted without explanation from his managerial position as BFTC Section Chief to a Senior Systems Engineer.  A much younger and less experienced employee in her mid-30s was promoted to a supervisory position over the 54-year-old employee.  Around this same time, the company terminated a 66-year-old Systems Engineering Contractor, and his manager told him that the decision was not due to any concerns about job performance.

In March 2016, a 64-year-old Principal Engineer who had been with Bombardier for approximately 18 years was fired without warning.  His director explained that Bombardier was targeting certain employees to be let go and that the decision was not related to job performance. Although the 64-year-old was told that his position was being eliminated, he learned that a much younger employee, whom he had trained, took over his job responsibilities.  In addition, he discovered that Defendants were advertising to fill a position with identical or substantially similar duties to the one he previously occupied.

In late 2015 and continuing into 2016, another 64-year-old engineer noticed that Bombardier was removing older engineering employees and replacing those individuals with substantially younger employees. He observed management use the task management program ("TMS system") to fabricate a record of performance deficiencies that was then used to justify terminating older workers. When BFTC management began telling him that the TMS system was showing that he was not meeting performance expectations, he believed that he had no choice but to resign in April 2016.

After BFTC management's statement of its intent to reduce the age of its workforce, multiple older employees were placed on Performance Improvement Plans ("PIPs"). These PIPs included many subjective evaluations. Ultimately, these employees were terminated from their positions.

In May 2016, Bombardier terminated named-Plaintiff Parr, a 63-year-old aerospace engineer who had been with the company for approximately 25 years. Parr was placed on a PIP with very complex and high-volume tasks. Parr had a long record of successful performance, but he was terminated and replaced by a younger employee, who was in his 20s and whom Parr had trained.

In August 2016, Bombardier used a PIP, the TMS system, and an allegation of a purported safety violation to terminate named-Plaintiff Wood. Wood was employed as an aerospace engineer in the BFTC for more than eight years prior to his termination. He was 59 years old when he was discharged. The company replaced Wood with a substantially younger employee.

Both Parr and Wood filed charges of age discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging a pattern and practice of age discrimination. Parr

filed his charge on January 27, 2017, and Wood filed his charge on January 30, 2017. After the EEOC mailed Plaintiffs a right-to-sue letter, Plaintiffs filed this Complaint on November 16, 2018. Both Plaintiffs assert an age discrimination claim and allege a pattern and practice of age discrimination. Wood asserts an additional claim for retaliation.

After a scheduling conference with the parties, the magistrate judge entered an order with a phased discovery plan. The initial discovery was to focus on pre-certification issues. At the conclusion of this phase, Plaintiffs were instructed to file a motion for conditional certification of the collective action. Following a ruling on the motion for conditional certification, the magistrate judge would set a new scheduling conference to set a schedule for merits discovery. The case was stayed for approximately three months, and the discovery plan was revised after Plaintiffs obtained new counsel. Several extensions to the pre-certification discovery deadlines were also granted.

Plaintiffs have now filed their motion seeking an order from this Court conditionally certifying a class. They ask the Court to (1) conditionally certify a class of all persons who were employees of Learjet or Bombardier in the engineering organization of the BFTC in Wichita, Kansas, from January 1, 2015, though the present, and were 40 years of age or older when their employment ended; (2) direct Defendants to provide, to the extent not previously provided, the last known home mailing addresses, personal email addresses, and personal phone numbers of all class members; (3) direct Defendants to provide the last four digits of social security numbers for all members of the class whose mailed notices are returned undeliverable; (4) approve Plaintiffs Woods and Parr as the class representatives and their counsel as class counsel in this matter; and (5) order the parties to confer and submit an agreed form of Notice to be sent to the class members by United States mail and email.

On May 18, 2021, the Court held a hearing for the parties to address questions regarding the proposed scope of the collective class action and how the class was defined.

## II.    Legal Standard

Class actions brought under the ADEA adopt the opt-in mechanism set out in § 216(b) of the Fair Labor Standards Act ("FLSA").[2]   The FLSA permits legal action "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[3]   Unlike class actions pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a collective action pursuant to the mechanism set forth in § 216(b) includes only those similarly-situated individuals who opt into the class.[4]   There is no definition, however, for what it means to be "similarly situated."   Instead, the Tenth Circuit has approved an *ad hoc*, two-step approach to § 216(b) certification claims for determining whether putative opt-in plaintiffs are similarly situated to the named plaintiff.[5]

First, in the initial "notice stage," the court "determines whether a collective action should be certified for purposes of sending notice of the action to potential class members."[6]   The notice stage "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[7]   The standard for

---

[2] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[3] 29 U.S.C. § 216(b).

[4] *Thiessen*, 267 F.3d at 1102 (stating that employees must give written consent to become party plaintiffs).

[5] *Id.* at 1102-03.

[6] *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004) (citation omitted).

[7] *Thiessen*, 267 F.3d at 1102 (alteration and citations omitted).

conditional certification at the notice stage is lenient and typically results in certification for the purpose of notifying potential plaintiffs.[8]

The second step of the *ad hoc* approach occurs after discovery.[9]  At this stage, the district court applies a stricter standard and reviews the following factors to determine whether the opt-in plaintiffs are similarly situated: (1) the disparate factual and employment conditions of the individual plaintiffs; (2) defenses available to the defendant that are individual to each plaintiff; (3) procedural and fairness considerations; and (4) whether the plaintiffs made the filings required by the ADEA prior to initiating suit.[10]

## III.   Discussion

### A.   Conditional Certification

Plaintiffs are at the initial, lenient stage of conditional certification.  Defendants, however, request that the Court employ an intermediate standard of review because the parties have completed a phase of "pre-certification" discovery.[11]  Defendants, however, do not provide the Court with any persuasive authority that the Court may employ such an approach.  Indeed, Defendants acknowledge that several cases from the District of Kansas have rejected a heightened standard.[12]

---

[8] *See, e.g., id.* at 1103; *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1261 (D. Kan. 2015).

[9] *Thiessen*, 267 F.3d at 1102-03.  The second stage in the certification analysis is most often prompted by a motion for decertification.  *Id.*

[10] *Id.* at 1103 (citation omitted).

[11] Defendants emphasize that the parties have engaged in pre-certification discovery for 16 months.  The Court notes, however, that the case was stayed for some time while Plaintiffs obtained different counsel.  In addition, the parties jointly requested extensions of time to the pre-certification discovery deadlines due to the COVID-19 pandemic.

[12] Defendants attempt to distinguish several of the District of Kansas cases by arguing that the defendants in those cases advocated for a stricter second-stage standard of review rather than the intermediate approach they propose.

The most recent District of Kansas case to fully discuss, and reject, a heightened standard for the initial stage of conditional class certification is *Koehler v. Freightquote.com, Inc.*[13]  In that case, Judge Crabtree noted that "[t]he Tenth Circuit has not addressed whether courts should apply a higher standard to conditional certification decisions before the end of discovery. However, our Court uniformly has rejected defendant's argument."[14]  Judge Crabtree recognized that the parties had engaged in a two-phased discovery plan, similar to this case, and that a significant amount of discovery had occurred.[15]  Yet, he found that Phase 2 discovery would begin after the Court's denial or grant of conditional certification, and thus discovery was ongoing.[16]  Because discovery had not concluded, "and following the procedure endorsed by the Tenth Circuit and uniformly followed by this Court," Judge Crabtree applied the lenient notice stage standard in determining whether to certify the collective action.[17]

In addition, in an earlier case, Judge Lungstrum noted that the parties had engaged in a two-phased discovery plan and substantial certification discovery had occurred.[18]  He specifically rejected a strict standard of review at the notice stage, and he also "decline[d] to apply an intermediate level of scrutiny in the absence of any suggestion from the Tenth Circuit that an examination of the specific issues in this case that might weigh against certification can

---

[13] 93 F. Supp. 3d 1257 (D. Kan. 2015).

[14] *Id*. at 1262 (citations omitted).

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *In re Bank of Am. Wage & Hour Empl. Litig.*, 286 F.R.D. 572, 577 (D. Kan. 2012).

occur at any stage short of summary judgment proceedings or final certification."[19]   In the District of Kansas, it is clear that a heightened notice stage standard is inapplicable even though some, or substantial, discovery has occurred.   Thus, the Court declines to depart from this practice and will not employ an intermediate approach at this notice stage.

Defendants next argue that Plaintiffs cannot satisfy the lenient standard.   They state that Plaintiffs fail to articulate any single decision, policy, or plan that applied to the putative collective.   Instead, they contend that Plaintiffs simply allege separate, independent decisions. The Court disagrees.

Here, Plaintiffs adequately allege a common plan or scheme of age discrimination that began in 2015 in which BFTC management stated its intention, multiple times, to reduce the average age of the BFTC workforce and bring in younger, newer employees.   Plaintiffs include declarations from six individuals, all of whom were older than 50, that were previously employed in the BFTC department and observed this practice and its effects.   Four individuals provided declarations in which they stated that they were placed on a PIP, with subjective criteria, and ultimately terminated for failure to complete the PIP.   In addition, these individuals stated that they trained the younger individuals who ultimately took over their positions.   All individuals who provided a declaration stated that they had consistently performed their duties satisfactorily, and it was only after BFTC management's statement that it intended to reduce the average age of the workforce that they were targeted for termination or dismissal.   One

---

[19] *Id.*; *see also Nelson v. Firebirds of Overland Park, LLC*, 2018 WL 3023195, at *5 (D. Kan. 2018) (rejecting "the invitation to bypass the first-stage certification standard in this case in favor of an intermediate level of scrutiny") (collecting cases).

individual stated that after he trained a younger employee, he was abruptly terminated and told that his termination was not related to performance.

Defendants focus on the factual differences in Plaintiffs' terminations, such as the specific reasons for termination, rather than the allegations of a common plan to reduce the age in the BFTC department.  At the initial stage of certification, "the court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims."[20]  Thus, at this point, the Court does not, and will not, weigh the factual differences in Plaintiffs' terminations.  Accordingly, the Court finds that Plaintiffs meet their initial burden for conditional certification for their ADEA claim.

## B.    Collective Action Definition

Plaintiffs seek certification of a collective of "all persons who were employees of Learjet, Inc. and/or Bombardier, Inc. in the engineering organization of the Bombardier Flight Test Center in Wichita, Kansas from January 1, 2015 through the present, and forty years of age or older at the time their employment ended."  Defendants contend that the scope of Plaintiffs' collective exceeds their allegations.  They first assert that Plaintiffs' temporal scope is overly broad.  Next, they state that the job definition for the class is overly broad.  The Court will address each contention.

### 1.  Temporal Scope

Generally, an individual must file an EEOC charge before proceeding in federal court.[21] The ADEA requires that a charge of discrimination be filed within 300 days of the unlawful

---

[20] *Koehler*, 93 F. Supp. 3d at 1263 (quoting *Folger v. Medicalodges, Inc.*, 2014 WL 2885363, at *3 (D. Kan. 2014)).

[21] *Thiessen*, 267 F.3d at 1109 n. 10.

practice.[22]  Under certain conditions, a similarly-situated plaintiff can opt-in to a collective suit by "piggybacking."[23]

Defendants contend that the temporal scope proposed by Plaintiffs is "ridiculously overbroad."  They assert that the maximum temporal scope is limited to the period covered by the two named Plaintiffs' EEOC charges.  This proposed time period, April 2, 2016, through January 30, 2017, covers the 300 days prior to the date the first charge was filed with the EEOC (January 27, 2017) up until the date the second charge was filed (January 30, 2017).

    a.    *Rearward Scope*

Here, Defendants contend that 300 days prior to the first filed charge is April 2, 2016, and no potential class member could be included in the class if they relied on allegedly discriminatory acts occurring prior to this date.  At the hearing, Plaintiffs agreed that for a party to be a viable part of the collective action, the party's claim would have had to occur after April 2, 2016.  Thus, the Court concludes that the collective class cannot extend further back than April 2, 2016, and limits the class from that date.

    b.    *Forward Scope*

Defendants also assert that a potential class member cannot opt into the class if his or her claim arises after January 30, 2017—the date the second representative plaintiff's charge was filed with the EEOC.  Plaintiffs contend that this temporal limitation is far too limited, particularly because Plaintiffs are asserting pattern or practice allegations.  They also state that Defendants' argument regarding timing is akin to an affirmative defense.

---

[22] *Almond v. Unified Sch. District No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011).

[23] *Thiessen*, 267 F.3d at 1110.

The Court concludes that Defendants' arguments are more appropriately directed toward the second stage of certification or a dispositive motion once the opt-in period has closed and putative plaintiffs have opted into the class. The failure to exhaust administrative remedies is an affirmative defense.[24]  In addition, whether an opt-in plaintiff can "piggyback" on a named plaintiff's EEOC charge requires looking at the factual circumstances of the named plaintiff's EEOC charge and the factual circumstances surrounding the opt-in plaintiff's claim.[25] Furthermore, the law regarding pattern and practice claims and whether the continuing violation doctrine is applicable is uncertain in this circuit.[26]

At this point, the parties are before the Court on the question of whether the parties are similarly situated for purposes of initial collective class certification. As noted above, the notice stage often results in certification of a collective class.[27]  A stricter standard is employed at the second stage in which the Court reviews additional factors such as defenses available to

---

[24] *See Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (noting that the failure to file an EEOC charge and exhaust administrative remedies is no longer a jurisdictional defect but rather it is an affirmative defense that may be raised in a motion to dismiss so long as the grounds for the defense appear on the face of the complaint).

[25] "[A] subsequent plaintiff may only piggyback on a charge if he or she could have filed a timely charge of discrimination at the time the charge-filing plaintiff filed his or her charge."  *Bolton v. Sprint/United Mgmt. Co.*, 2006 WL 1789142, at *2 (D. Kan. 2006) (citing *Thiessen*, 267 F.3d at 1111).

[26] *See Semsroth v. City of Wichita*, 304 F. App'x 707, 716-17 (10th Cir. 2008) (finding that the pattern or practice method of proving discrimination is inapplicable to individual, private plaintiffs and concluding that "the pattern or practice method of proof is available only to . . . class actions" but declining "to address whether the continuing violations doctrine applies to the pattern or practice method of proof");  *see also Raymond v. Spirit Aerosystems Holdings*, 2020 WL 4596862, at *9-10 (D. Kan. 2020) (citing cases and noting that the "invocation of a 'pattern or practice' of discrimination does not render the *Morgan* [discrete act filing] rule inapplicable" but deciding the defendant's motion to dismiss on alternative grounds and finding that "the issuance of a ruling on the issue [would be] uncertain and potentially advisory in nature.").
    The Court notes that the evidence may demonstrate that there was no pattern or practice of discrimination and thus would be inapplicable here.  In addition, the factual circumstances may indicate that potential plaintiffs are not similarly situated to the named Plaintiffs, and this case involves discrete actions.  These questions, however, are more appropriately addressed later.

[27] *See Thiessen*, 267 F.3d at 1103.

Defendants and whether Plaintiffs made the appropriate ADEA filings prior to suit.[28]  Thus, it appears premature to dismiss potential claims on statute of limitations issues at the initial certification stage.  Accordingly, the Court will not limit the class definition to the 303-day period that Defendants request.  Instead, the class will cover employees who were employed on April 2, 2016, and it will cover employees whose employment ended after that date and were forty years of age or older when their employment ended.

     *2.  Job Definition*

Defendants also contend that Plaintiffs' class definition is too broad, and their allegations do not support a collective of "all persons" in BFTC engineering because that proposed collective class could include non-engineer employees, such as administrative support personnel.  Plaintiffs proposed class includes "all persons who were employees of Learjet, Inc. and/or Bombardier, Inc. in the engineering organization of the Bombardier Flight Test Center in Wichita, Kansas."  Defendants propose that the class encompass "[e]mployees in the engineering or designer job families at the Bombardier Flight Test Center in Wichita, Kansas . . . ."  The Court questioned the parties at length about the proposed definitions at the hearing.[29]  Ultimately, the Court will adopt the job definition as "the non-bargaining unit personnel employed in the Bombardier Flight Test Center in Wichita, Kansas."

Finally, Defendants argue that Plaintiffs' collective cannot include every person, above the age of 40, "at the time their employment ended" for any reason.  They claim that Plaintiffs cannot represent a collective of every person within BFTC engineering who left for any reason, voluntarily or involuntarily.  Defendants request that the collective class be limited to those

---

[28] *Id.* at 1102-03.

[29] Plaintiffs' proposal during the hearing appeared to broaden the class even further.

employees "who were terminated for performance based on metrics in the TMS system or for cause because of a safety violation."  The Court declines to narrow the collective class to these limited circumstances.  Although Plaintiffs contend that Defendants engaged in a pattern of placing older employees on subjective PIPs and then terminating their employment when they failed to reach those expectations, Plaintiffs also contend that some employees were threatened with placement on a PIP and left employment because they believed that they would be constructively discharged.  In addition, Plaintiffs include allegations that Defendants stated their intention to reduce the average age of the BFTC workforce, and shortly after stating this intention, several older employees were terminated and told that their terminations did not relate to poor job performance.   Accordingly, Defendants' proposal is too restrictive.

In sum, the Court finds that the following class definition is appropriate: "all persons who were non-bargaining unit personnel employed in the Bombardier Flight Test Center in Wichita, Kansas on April 2, 2016, and whose employment thereafter ended, and were forty years of age or older at the time their employment ended."

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Conditional Collective Action Certification (Doc. 59) is **GRANTED**.

Defendants are directed to provide, to the extent not previously provided, the last known home mailing addresses, personal email addresses, and personal phone numbers of all potential class members.  In addition, Defendants are directed to provide the last four digits of social security numbers for all members of the class whose mailed notices are returned undeliverable.

The Court approves Mark Woods and Dennis Parr as the class representatives and approves their counsel as class counsel in this matter.

The parties are directed to confer and submit an Agreed Notice to the Court to be sent to the class members by United States mail and email.

**IT IS SO ORDERED**.

Dated this 9th day of June, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE